UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MARCIE S.,

        Plaintiff,

    v.                               **DECISION AND ORDER**
                                              21-CV-843S

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.
_____

    1.   Plaintiff Marcie S.[1] challenges the determination of an Administrative Law Judge ("ALJ") that she is not disabled within the meaning of the Social Security Act ("the Act"). Plaintiff alleges that she has been disabled since February 15, 2019, due to a variety of physical impairments. Plaintiff maintains that she is entitled to benefits because her impairments render her unable to work.

    2.   Plaintiff filed her application for disability benefits on July 23, 2019. After denial at the agency level, Plaintiff proceeded to a telephonic hearing before ALJ Timothy McGuan on October 20, 2020. At the time of the hearing, Plaintiff was 54 years old, with at least a high school education, and had past relevant work as a fast-food worker and fast-food service manager. The ALJ considered the case *de novo* and, on October 30, 2020, issued a written decision denying Plaintiff's application for benefits. The Appeals Council thereafter denied Plaintiff's request for review on May 19, 2021.

---

[1] In accordance with this district's Standing Order of November 18, 2020, and consistent with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, this Decision and Order identifies the plaintiff by first name and last initial only.

1

3. Plaintiff filed the current action on July 22, 2021, challenging the Commissioner's final decision.[2] After filing of the administrative record, the parties cross-moved for judgment on the pleadings under Rule 12 (c) of the Federal Rules of Civil Procedure, with briefing concluded on May 23, 2022.[3] (Docket Nos. 6, 7, 12-14.) The Clerk of Court assigned the case here on October 4, 2022, at which time this Court took the motions under advisement without oral argument. (Docket No. 15.) For the following reasons, Plaintiff's motion will be granted, Defendant's motion will be denied, and this case will be remanded to the Commissioner for further proceedings consistent with this decision.

4. A party is entitled to judgment on the pleadings under Rule 12 (c) "only if it has established that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." Juster Assocs. v. City of Rutland, 901 F.2d 266, 269 (2d Cir. 1990) (internal quotation marks omitted). In social security appeals, the district court may "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing a decision of the Commissioner of Social Security, with or without remanding the case for a rehearing." 42 U.S.C. § 405 (g).

5. A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. § 405 (g); Wagner v. Sec'y of Health & Hum. Servs., 906 F.2d 856, 860 (2d Cir. 1990). Instead, the court's inquiry is limited to two issues: (1) whether the Commissioner applied the correct legal standards; and (2)

---

[2] The ALJ's October 30, 2020 decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

[3] Although Plaintiff did not file a notice of motion, she filed a brief seeking judgment on the pleadings in her favor. (Docket No. 12.)

whether the Commissioner's factual findings are supported by substantial evidence. See Greek v. Colvin, 802 F.3d 370, 374-75 (2d Cir. 2015) (per curiam); see also Norman v. Astrue, 912 F. Supp. 2d 33, 70 (S.D.N.Y. 2012) ("The Court first reviews the Commissioner's decision for compliance with the correct legal standards; only then does it determine whether the Commissioner's conclusions were supported by substantial evidence."). In conducting this inquiry, the court cannot substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Hum. Servs., 733 F.2d 1037, 1041 (2d Cir. 1984). Consequently, if the Commissioner's determination is free from legal error and supported by substantial evidence, the court must affirm. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979).

6.     As it relates to the legal-error inquiry, the court must determine whether "the claimant has had a full hearing under the [Commissioner's] regulations and in accordance with the beneficent purposes of the [Social Security] Act." Moran v. Astrue, 569 F.3d 108, 112 (2d Cir. 2009) (internal quotations and citations omitted). "Failure to apply the correct legal standard constitutes reversible error, including, in certain circumstances, failure to adhere to the applicable regulations." Kohler v. Astrue, 546 F.3d 260, 265 (2d Cir. 2008) (citation omitted). This inquiry is completed first because "[w]here there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles." Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987).

7. As it relates to the substantial-evidence inquiry, the standard is not high. See Biestek v. Berryhill, __ U.S. __, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019). The United States Supreme Court defines substantial evidence as only "more than a mere scintilla," Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971), and has clarified that "[i]t means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,'" Biestek, 139 S. Ct. at 1154 (quoting Consol. Edison Co. v. NLRB, 305 U.S 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938)). Because the Commissioner's factual findings are conclusive if supported by substantial evidence, see 42 U.S.C. § 405 (g), review is properly focused on whether substantial evidence supports the Commissioner's determination, not whether substantial evidence might also support the plaintiff's position. See Zacharopoulos v. Saul, 516 F. Supp. 3d 211, 220 (E.D.N.Y. 2021) (noting that "the relevant question is not whether substantial evidence supports plaintiff's position, but whether 'substantial evidence supports *the ALJ's decision*'") (quoting Bonet ex rel. T.B. v. Colvin, 523 F. App'x 58, 59 (2d Cir. 2013) (emphasis in original)). This is "a very deferential standard of review—even more so than the 'clearly erroneous' standard." Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam) (citing Dickinson v. Zurko, 527 U.S. 150, 153, 119 S. Ct. 1816, 144 L. Ed. 2d 143 (1999)).

8. "To determine on appeal whether [the Commissioner's] findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial

4

evidence, the Commissioner's factual findings must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  Similarly, where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).  In short, the substantial-evidence standard requires that once an ALJ finds facts, those facts can be rejected "'only if a reasonable factfinder would *have to conclude otherwise*.'" Brault, 683 F.3d at 448 (quoting Warren v. Shalala, 29 F.3d 1287, 1290 (8th Cir. 1994) (emphasis in original)).

    9.    The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Act.  See 20 C.F.R. § 404.1520.  The Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, and it remains the proper approach for analyzing whether a claimant is disabled. 482 U.S. 137, 140-42, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987).

    10.    The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits her physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider her disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, she has the residual functional capacity to

> perform her past work.  Finally, if the claimant is unable to perform her past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); see also 20 C.F.R. § 404.1520; Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).

  11. The claimant has the burden of proof on the first four steps; the Commissioner has the burden of proof on the fifth step.  See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984).  The fifth step is divided into two parts.  First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience.  Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform.  See 42 U.S.C. § 423 (d)(2)(A); 20 C.F.R. § 404.1520 (f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

  12. In this case, the ALJ found the following with regard to the five-step process set forth above: (1) Plaintiff had not engaged in substantial gainful activity since February 15, 2019, the alleged onset date (R. at 17); (2) Plaintiff's obesity, hyperthyroidism, hypertension (uncontrolled), and chronic obstructive pulmonary disease ("COPD") were severe impairments within the meaning of the Act (R. at 17-18); (3) Plaintiff did not have an impairment or combination of impairments that met or medically equaled any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (R. at 18); (4) Plaintiff retained the residual functional capacity ("RFC") to perform light work as defined in 20

C.F.R. § 404.1567 (b), with certain limitations[4] (R. at 18-22); (5) Plaintiff was able to perform her past relevant work as a fast-food worker and fast-food service manager (R. at 22); and, alternatively, (6) Plaintiff could perform other jobs that exist in significant number in the national economy (R. at 22-23).  Accordingly, the ALJ determined that Plaintiff was not under a disability as defined by the Act from February 15, 2019, through October 30, 2020.  (R. at 15, 23.)

13.     Plaintiff lodges a single challenge to the ALJ's decision: she argues that the ALJ failed to properly apply the new regulations governing the consideration of medical opinion evidence in formulating her RFC.  In response, the Commissioner argues that the ALJ's decision is free from legal error and supported by substantial evidence and should therefore be affirmed.  This Court agrees with Plaintiff.

14.     Under the regulations applicable to claims filed on or after March 27, 2017, such as this one, the Commissioner no longer defers to medical opinions[5] nor gives them

---

[4] The limitations consist of the following: "never climb ladders, ropes or scaffolds and never crawl; occasionally climb ramps/stairs; occasionally balance, stoop, kneel and crouch; avoid concentrated exposure to all respiratory irritants and heights/hazards."  (R. at 18-19.)

[5] Under the revised regulations, a "medical opinion" is defined as follows:

> Medical opinion.  A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in the following abilities:
>
> (i)  Your ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching);
>
> (ii)  Your ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting;
>
> (iii)   Your ability to perform other demands of work, such as seeing, hearing, or using other senses; and

7

any specific evidentiary weight. See 20 C.F.R. §§ 404.1520c (a). Instead, the Commissioner assesses the persuasiveness of medical opinions according to five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors, including familiarity with other evidence in the claim or an understanding of the agency's policies and evidentiary requirements. See 20 C.F.R. § 404.1520c (c)(1)-(5).

15. Of the five factors, supportability and consistency are the most important, even more so than the source of the opinion. See 20 C.F.R. § 404.1520c (a), (b)(2). "Supportability" concerns the degree to which a medical opinion is supported by objective medical evidence and supporting explanations: "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinions(s) . . . the more persuasive the medical opinion(s) . . . will be." See 20 C.F.R. § 404.1520c (c)(1). "Consistency" measures the degree to which a medical opinion is consistent with the evidence from other medical and non-medical sources: "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." See 20 C.F.R. § 404.1520c (c)(2). Each of these factors thus requires some comparison of the medical opinions to other medical evidence of record.

16. "The ALJ must articulate his [or her] consideration of the medical opinion evidence, including how persuasive he [or she] finds the medical opinions in the case

---

      (iv) Your ability to adapt to environmental conditions, such as temperature extremes or fumes.

20 C.F.R. §§ 404.1513 (a)(2); 416.913 (a)(2).

record." See Jacqueline L. v. Comm'r of Soc. Sec., 515 F. Supp. 3d 2, 8 (W.D.N.Y. 2021). But the ALJ is generally required to articulate and explain only the consideration of the supportability and consistency factors, not the others. See 20 C.F.R. § 404.1520c (b)(2). Nonetheless, if the ALJ finds that two or more medical opinions on the same issue are equally well-supported and consistent with the record but are not exactly the same, the ALJ must articulate the consideration of the other most persuasive factors. See 20 C.F.R. § 404.1520c (b)(3).

17. In articulating his or her consideration of medical opinion evidence, the ALJ must do so in a way that is reviewable. While the analysis need not necessarily include the words "supportability" and "consistency," it must be discernable that the ALJ properly applied the regulations and considered both factors in weighing the medical opinions of record. See Kathleen K. v. Comm'r of Soc. Sec., 20-CV-1160-EAW, 2022 WL 999686, at *4 (W.D.N.Y. Apr. 4, 2022) (citing cases); see also, Warren I. v. Comm'r of Soc. Sec., No. 5:20-CV-495 (ATB), 2021 WL 860506, at *6 (N.D.N.Y. Mar. 8, 2021) ("Regardless of any allusion to the old regulations, an evaluation of the medical opinion evidence which sufficiently comports with the essence of the new regulations, and in particular sets forth a sufficient explanation of the ALJ's consideration of the supportability and consistency factors, should withstand judicial scrutiny."). In this regard, "[a]t their most basic, the amended regulations require that the ALJ explain [his or her] findings regarding the supportability and consistency for each of the medical opinions, 'pointing to specific evidence in the record supporting those findings.'" Raymond M. v. Comm'r of Soc. Sec., No. 5:19-CV-1313 (ATB), 2021 WL 706645, at *8 (N.D.N.Y. Feb. 22, 2021) (citation omitted).

18.     Most prominently at issue here is the ALJ's consideration of the opinion of Dr. Russell Lee, who examined Plaintiff on September 11, 2019. (R. at 330-334.) On the date of examination, Plaintiff's blood pressure was elevated at 142/86, causing Dr. Lee to advise Plaintiff to see her primary physician within one week for further follow up. (R. at 330, 332.) Dr. Lee noted Plaintiff's history of random and unpredictable chest pain that occurs more frequently with exertion. (R. at 331.) The episodes occur two or three times per week and last 60-90 minutes. Id. After examination, Dr. Lee diagnosed "likely anginal chest pain, secondary to coronary artery disease," and opined that Plaintiff was "limited from activities requiring mild or greater exertion." (R. at 334.)

19.     The ALJ discussed Dr. Lee's findings and found that his opinion was unpersuasive. (R. at 20, 21.) But in his recitation of the objective evidence, the ALJ failed to discuss Plaintiff's elevated blood pressure and her significant episodes of chest pain upon exertion, the two conditions that underlie Dr. Lee's opinion. (R. at 20.) Moreover, the ALJ articulated only that Dr. Lee's opinion was "not consistent and supportive with the rather normal exam he conducted," with the only further elaboration being that "the examination conducted by Dr. Lee does not support someone limited only to sedentary work." (R. at 21.)

20.     The ALJ's consideration of Dr. Lee's opinion fails to meet the requirements of 20 C.F.R. § 404.1520c (b)(2). Although the ALJ's analysis of the supportability factor may minimally meet the standard—the ALJ discussed the supportability of Dr. Lee's opinion in connection with his examination and objective findings—his analysis of the consistency factor does not. Rather than assess the consistency of Dr. Lee's opinion with evidence from other medical and nonmedical sources, the ALJ simply concludes, without

10

explanation, that Dr. Lee's opinion "is not consistent . . . with the rather normal exam he conducted." (R. at 21.)  But "[t]he consistency factor does not measure whether a medical opinion is consistent with a single other medical opinion—it measures whether the medical opinion is consistent with *all* medical and nonmedical evidence in a claim."  See Darla W. v. Comm'r of Soc. Sec., No. 5:20-cv-1085 (TWD), 2021 WL 5903286, at *9 (N.D.N.Y. Dec. 14, 2021) (emphasis in original).  Examination of the record reveals that the ALJ wholly fails to assess Dr. Lee's opinion against the other record evidence, some of which could arguably support his opinion, such as that indicating continuing and uncontrolled high blood pressure, chest-pain episodes, and shortness of breath (R. at 323, 361, 369, 556).  See Cuevas v. Comm'r of Soc. Sec., No. 20-CV-0502 (AJN)(KHP), 2021 WL 363682, at *10 (S.D.N.Y. Jan. 29, 2021) ("[C]onsistency is an all-encompassing inquiry focused on how well a medical source is supported, or not supported, by the entire record, not just what a medical source had available to them.").  So too, the ALJ offers only conclusory assessments of the two consulting opinions he found to be persuasive, stating only that they were "based on record review, program knowledge and [are] consistent with the overall medical record," without any discussion.  (R. at 6.)

   21. Consequently, having reviewed the entire record, this Court finds that the ALJ failed to properly analyze the medical opinions under 20 C.F.R. § 404.1520c (b)(2) and thereby committed legal error requiring remand.  See Kathleen K., 2022 WL 999686, at *5 (finding legal error where the ALJ's analysis "completely lacked any discussion related to the consistency of [the doctor's] findings with the other medical evidence of record.").  The ALJ's error is significant because, if credited, Dr. Lee's opinion would likely preclude light work.  This case will therefore be remanded to the Commissioner for proper

consideration of the medical opinions and for all further administrative proceedings consistent with this decision.

      IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 12) is GRANTED.

      FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 13) is DENIED.

      FURTHER, that this case is REMANDED to the Commissioner of Social Security for further administrative proceedings consistent with this decision.

      FURTHER, that the Clerk of Court is directed to CLOSE this case.

      SO ORDERED.

Dated:    February 28, 2023
            Buffalo, New York

                                          <u>s/William M. Skretny</u>
                                          WILLIAM M. SKRETNY
                                        United States District Judge